**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang**

Civil Action No. 20-cv-03319-NYW-JPO

ROBERT O. CARR,
TWENTY ON 23RD, LLC,
TOWNHOMES ON CONEJOS, LLC,
FOUR ON LOWELL BLVD, LLC, and
SIXTEEN ON IRVING STREET, LLC,

    Plaintiffs,

v.

RICKI WELLS,
RISE DEVELOPMENT LLC, and
ADVANCED EQUITY, LLC

    Defendants.

---

## MEMORANDUM OPINION AND ORDER

---

This matter is before the Court on Plaintiffs' Motion to Reopen Case for the Limited Purpose of Entering Consent Judgment ("Motion" or "Motion to Reopen"). [Doc. 131]. Defendants Ricki Wells and Rise Development LLC (together, "Defendants")[1] have responded. [Doc. 136]. Plaintiffs have replied. [Doc. 144]. For the reasons set forth below, the Motion to Reopen is respectfully **GRANTED**.

---

[1] Plaintiffs also named Advanced Equity, LLC as a defendant in this action. [Doc. 98 at ¶ 13]. But Advanced Equity never appeared in this case, was voluntarily dismissed, and was not a party to the Settlement Agreement and proposed Consent Judgment that form the basis of the Motion to Reopen. [Doc. 129; Doc. 135-1 at 2; 135-2 at 2]; *see also* [Doc. 131 at ¶ 1 (Plaintiffs excluding Advanced Equity from their definition of "Defendants")]. Accordingly, the Court does not consider Advanced Equity a Defendant for purposes of this Order.

**BACKGROUND**

This case began in November 2020 as a dispute over the revenues from the development of several residential properties. *See generally* [Doc. 1; Doc. 98]. Plaintiffs alleged that, under the Parties' contracts, Defendants owed them more than $3.8 million in unpaid interest, plus Plaintiffs' share of the profits and other damages. [Doc. 98 at ¶¶ 77–80]. In June 2024, the Parties jointly stipulated that they had entered into a settlement agreement and "agreed to the dismissal of the action with prejudice on the condition that the Court enter retain [sic] jurisdiction to enforce the terms of the Settlement Agreement." [Doc. 126]. The Court found that the Parties' stipulation of dismissal was self-effectuating and agreed to "retain jurisdiction over the Parties' settlement agreement." [Doc. 129]. The case was terminated. [*Id.*; Doc. 130].

Plaintiffs moved to reopen the case in March 2025. [Doc. 131]. Plaintiffs assert that Defendants' first payment under the Settlement Agreement was due on December 31, 2024. [*Id.* at ¶ 8; Doc. 135-2 at 5–6]. But Defendants have yet to make any payments under the Settlement Agreement, despite receiving two notices of default from Plaintiffs. [Doc. 131 at ¶¶ 9–11; Doc. 131-3 at ¶¶ 8–10]. Defendants do not dispute that they have defaulted on the payments required by the Settlement Agreement. [Doc. 131-1 at ¶ 11; Doc. 136 at ¶¶ 11–14, 17]. The Parties also agree that the Settlement Agreement provides that, if Defendants defaulted on their payments, they would be subject to a "Consent Judgment" imposing a "Liquid Damages Amount" of $2.5 million. [Doc. 135-2 at ¶¶ 5, 8; Doc. 135-1; Doc. 136 at ¶ 18].

Although they generally agree as to the Settlement Agreement's requirements, the Parties dispute whether the Court should enforce the agreement and its incorporated,

2

proposed Consent Judgment.  Plaintiffs ask the Court to reopen the case and enter the proposed Consent Judgment in Plaintiffs' favor.  [Doc. 131 at 4].  Defendants ask the Court to either (1) deny the Motion and "reform the Settlement Agreement to [forbear] the first . . . quarterly payment until September 30, 2025"; or (2) enter the Consent Judgment for the lower settlement amount of $2 million instead of the $2.5 million "penalty" under the Consent Judgment.  [Doc. 136 at ¶ 21].

## LEGAL STANDARD

"A trial court has the power to summarily enforce a settlement agreement entered into by the litigants while the litigation is pending before it."  *Shoels v. Klebold*, 375 F.3d 1054, 1060 (10th Cir. 2004) (quotation omitted).  A settlement agreement is a contract to end judicial proceedings, so issues involving the formation and construction of a settlement agreement are generally resolved by applying state contract law.  *See United States v. McCall*, 235 F.3d 1211, 1215 (10th Cir. 2000).  Here, the Settlement Agreement provides that federal and Colorado law govern its terms, [Doc. 135-2 at ¶ 22], and the Parties both invoke Colorado law in their briefs, [Doc. 136 at ¶¶ 15, 18–20; Doc. 144 at ¶¶ 25, 30–31, 42–43].  The Court accordingly applies Colorado contract law to the Settlement Agreement.  *See Grynberg v. Total S.A.*, 538 F.3d 1336, 1346 (10th Cir. 2008) ("Because the parties' arguments assume that Colorado law applies, we will proceed under the same assumption.").

The Court will also apply Colorado contract law to any contract issues presented by the proposed Consent Judgment.[2]  A consent judgment is "basically contractual [in]

---

[2] Although the Court uses the term "consent judgment" in this Order, "the terms 'consent judgment' and 'consent decree' are generally used interchangeably."  *Montez v. Hickenlooper*, 640 F.3d 1126, 1131 n.1 (10th Cir. 2011).

nature" and is "construed . . . basically as a contract." *Satsky v. Paramount Commc'ns, Inc.*, 7 F.3d 1464, 1468 (10th Cir. 1993) (quotation omitted); *see also, e.g.*, *Alpine Amusement Co. v. 741, Inc.*, No. 24-cv-00728-CYC, 2025 WL 2855394, at *3 (D. Colo. Oct. 8, 2025) (interpreting consent decree using Colorado contract law). But because a consent judgment is entered by the court, it is also subject to federal procedural law regarding the entry of judgments. *See Rufo v. Inmates of Suffolk Cnty. Jail*, 502 U.S. 367, 378 (1992) ("[A consent judgment] is an agreement that the parties desire and expect will be reflected in, and be enforceable as, a judicial decree that is subject to the rules generally applicable to other judgments and decrees."). The Court concurs with the Eleventh Circuit's demarcation of the boundary between state contract law and the federal law of judgments:

> "[W]hether [a] settlement agreement was a valid contract is determined by the substantive law of contracts of the forum state. But, whether a settlement agreement, tested under state law, has been accepted by a federal court and properly incorporated into a valid and enforceable judgment is purely a question of federal procedural law.

*FTC v. Am. Ent. Distribs., Inc.*, 433 F. App'x 816, 817 (11th Cir. 2011) (per curiam).

When determining whether to enter a proposed consent judgment, "the district court is faced with the option of either approving or denying the [judgment]; the settlement must stand or fall as a whole." *United States v. Colorado*, 937 F.2d 505, 509 (10th Cir. 1991) (quotation omitted). The Court generally "is not entitled to change the terms of the agreement stipulated to by the parties," unless it first affords the parties notice and an opportunity to respond. *Id.* at 509–10. But a court "is not obliged to approve every proposed consent decree placed before it." *Id.* at 509. Before approving a proposed consent judgment, the Court must ensure the judgment "is fair, adequate, and

4

reasonable" and "is not illegal, a product of collusion, or against the public interest." *Id.* Whether to approve a consent judgment is within the district court's discretion. *Johnson v. Lodge #93 of Fraternal Order of Police*, 393 F.3d 1096, 1102 (10th Cir. 2004).

## ANALYSIS

### I. The Court Has Jurisdiction Over the Settlement Agreement

The Court's analysis begins with its jurisdiction. Plaintiffs assert that the Court may enforce the Settlement Agreement and enter the proposed Consent Judgment pursuant to both Rule 60(b) and the Court's order retaining jurisdiction over the Settlement Agreement. [Doc. 131 at ¶ 14]; *see* Fed. R. Civ. P. 60(b); [Doc. 129]. Defendants do not dispute either basis of authority. *See* [Doc. 136 at ¶¶ 15–21 (arguing that the Court *should not*, as opposed to *cannot*, enforce the Consent Judgment)]. The Court, however, has an independent obligation to verify its subject matter jurisdiction. *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006).

Enforcement of a settlement agreement "is more than just a continuation or renewal of the dismissed suit, and hence requires its own basis for jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 378 (1994). And, ordinarily, a stipulation of dismissal under Rule 41(a)(1)(ii) "immediately strips the district court of jurisdiction over the merits" of a case. *De Leon v. Marcos*, 659 F.3d 1276, 1283 (10th Cir. 2011); *see* Fed. R. Civ. P. 41(a)(1)(ii). As Plaintiffs recognize, there are two main avenues for a federal court to revisit a case after it has been voluntarily dismissed.

First, notwithstanding a stipulation of dismissal, a federal court may act with the "limited purpose of reopening and setting aside the judgment of dismissal within the scope allowed by [Rule] 60(b)." *Smith v. Phillips*, 881 F.2d 902, 904 (10th Cir. 1989) (cleaned

5

up). Rule 60(b) permits a court to relieve a party from a final judgment or order for, among other things, "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(6). Relief under any subsection of Rule 60(b) is "extraordinary and may only be granted in exceptional circumstances." *Zurich N. Am. v. Matrix Serv., Inc.*, 426 F.3d 1281, 1289 (10th Cir. 2005) (quotation omitted). Rule 60(b)(6) relief is "even more difficult to attain and is appropriate only when it offends justice to deny such relief." *Id.* at 1293 (quotation omitted). But, where appropriate, Rule 60(b)(6) supplies a "grand reservoir of equitable power to do justice in a particular case." *Pierce v. Cook & Co.*, 518 F.2d 720, 722 (10th Cir. 1975) (quotation omitted). Thus, in rare cases, "courts have used Rule 60(b)(6) to undo or enforce a settlement agreement between the parties." *In re Centrix Fin., LLC*, No. 09-cv-00088-PAB-CBS, 2019 WL 4242667, at *2 (D. Colo. Sept. 6, 2019) (citations omitted).

Second, a court may retain ancillary jurisdiction to enforce a settlement agreement. The doctrine of ancillary jurisdiction "recognizes federal courts' jurisdiction over some matters . . . that are incidental to other matters properly before them." *Kokkonen*, 511 U.S. at 378. Relevant here, ancillary jurisdiction permits a federal court to "manage its proceedings, vindicate its authority, and effectuate its decrees." *Id.* at 380. But a court's authority to enforce its orders only extends to a settlement agreement "if the parties' obligation to comply with the terms of the settlement agreement [is] made part of the order of dismissal." *Id.* at 381. To do so, the order of dismissal must either "show[] an intent to retain jurisdiction or incorporate[] the settlement agreement." *Morris v. City of Hobart*, 39 F.3d 1105, 1110 (10th Cir. 1994) (citing *Kokkonen*, 511 U.S. at 381).

The order of dismissal in this case plainly retains ancillary jurisdiction to enforce the Settlement Agreement. *Kokkonen* suggests that "a separate provision 'retaining

6

Case No. 1:20-cv-03319-NYW-JPO   Document 145   filed 02/26/26   USDC Colorado
pg 7 of 13

jurisdiction' over the settlement agreement" is sufficient to preserve ancillary jurisdiction. 511 U.S. at 381. At the Parties' request, [Doc. 126], this Court's order of dismissal did just that—the Court stated that it would "retain jurisdiction over the Parties' settlement agreement," [Doc. 129]. And because the Court has ancillary jurisdiction to enforce the Settlement Agreement (and, by extension, the incorporated Consent Judgment), the Court need not consider whether Plaintiffs could also obtain relief under the more stringent Rule 60(b)(6) standard.

II.   **The Court Will Enforce the Settlement Agreement**

The Court turns to whether Plaintiffs are entitled to the $2.5 million "Liquid Damages Amount" under the Settlement Agreement and proposed Consent Judgment. As an initial matter, the Court reiterates that the terms of the Settlement Agreement are undisputed. The Parties agreed to a total settlement amount of $2 million, plus 6% interest, to be paid in installments over a five-year term. [Doc. 135-2 at ¶ 2; Doc. 136 at ¶ 18; Doc. 144 at ¶ 18].[3] Defendants failed to make payments under the Agreement and are now in default. [Doc. 131-1 at ¶ 11; Doc. 136 at ¶¶ 11–14, 17]. In this scenario, the Settlement Agreement entitles Plaintiffs to seek entry of judgment in the amount of $2.5 million. [Doc. 135-2 at ¶ 8].

Nevertheless, Defendants argue that the Court should decline to enforce the Settlement Agreement for two reasons. First, they argue that Plaintiffs have breached

---

[3] The Settlement Agreement in the record redacts the settlement amount. *See* [Doc. 135-2 at ¶ 2]. For purposes of this Motion only, the Court construes the Parties' statements in their briefing confirming the settlement amount as $2 million as judicial admissions. *United States v. Nelson*, 868 F.3d 885, 890–91 (10th Cir. 2017) ("[S]tatements in briefs . . . may, in [the] court's discretion, operate as judicial admissions that have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact." (quotation omitted)).

their implied duty of good faith and fair dealing by refusing to extend the due date of Defendants first payment. [Doc. 136 at ¶¶ 15–17]. Next, they argue that the liquidated damages amount constitutes an unenforceable penalty. [*Id.* at ¶¶ 18–20]. The Court addresses each argument in turn.

### A. Implied Duty of Good Faith and Fair Dealing

Defendants' first theory is that Plaintiffs breached the implied duty of good faith and fair dealing by refusing to "grant a forbearance" and extend the due date for Defendants' first payments to September 30, 2025. [*Id.* at ¶¶ 15–17]. Defendants ask the Court to intervene and "reform the Settlement Agreement to [forbear] the first $25,000 quarterly payment until September 30, 2025." [*Id.* at ¶ 21].

As Plaintiffs point out, this argument is deficient for multiple reasons. [Doc. 144 at ¶¶ 40–45]. To start, Defendants improperly request affirmative relief—reformation of the Settlement Agreement[4]—in their response brief. *See* D.C.COLO.LCivR 7.1(d) ("A motion shall not be included in a response or reply to the original motion. A motion shall be filed as a separate document."). The argument fares no better on its merits. To be sure, Colorado law imbues all contracts with an implied covenant of good faith and fair dealing. *See Amoco Oil Co. v. Ervin*, 908 P.2d 493, 498 (Colo. 1995). It is unclear, though, whether one party's breach of the implied covenant excuses another party's non-performance. *See Soicher v. State Farm Mut. Auto. Ins. Co.*, 351 P.3d 559, 565 (Colo.

---

[4] Because Defendants fail to properly raise their request for contract reformation, the Court need not consider whether this case presents one of the limited situations where such a remedy is appropriate. *See Affordable Country Homes, LLC v. Smith*, 194 P.3d 511, 515 (Colo. App. 2008) ("[T]he court may grant [reformation] if the evidence clearly and unequivocally shows that an instrument does not express the true intent or agreement of the parties.").

8

App. 2015) ("[P]roof of an insured's prejudicial noncooperation will likely bar a claim for benefits. . . . Proof of a violation of the implied covenant of good faith and fair dealing, in contrast, will not necessarily do so."). Defendants offer no reason why the implied covenant should be available as an affirmative defense here.

Even assuming such a defense is available, Defendants fail to show that Plaintiffs breached the implied covenant of good faith and fair dealing. "The covenant may be relied upon only when the manner of performance under a specific contract term allows for discretion on the part of either party. However, it will not contradict terms or conditions for which a party has bargained." *Amoco*, 908 P.2d at 498 (citation omitted). Defendants identify no "specific contract term" allowing Plaintiffs any discretion regarding the due dates of settlement payments. To the contrary, the Settlement Agreement unequivocally required Defendants to make their first payment on or before December 31, 2024. As Defendants admit, the Parties bargained for that due date. [Doc. 144 at ¶ 8–10, 16]. Plaintiffs' duty of good faith "does not obligate [them] to accept a material change in the terms of the contract." *Wells Fargo Realty Advisors Funding, Inc. v. Uioli, Inc.*, 872 P.2d 1359, 1363 (Colo. App. 1994). Accordingly, Plaintiffs' refusal to deviate from the bargained-for due date of December 31, 2024 did not breach their implied duty of good faith and fair dealing.[5]

---

[5] This Court notes that it is now well beyond September 30, 2025, and there is no indication on the docket that Defendants have made any payment.

9

### B.     Enforceability of Liquidated Damages Amount

Defendants' second theory is that the liquidated damages amount in the Consent Judgment is an unenforceable penalty. [Doc. 136 at ¶¶ 18–20]. A liquidated damages provision is enforceable if three elements are met:

> (1) the parties intended to liquidate damages; (2) the amount of liquidated damages, when viewed as of the time the contract was made, was a reasonable estimate of the presumed actual damages that the breach would cause; and (3) when viewed again as of the date of the contract, it was difficult to ascertain the amount of actual damages that would result from a breach.

*Ravenstar, LLC v. One Ski Hill Place, LLC*, 401 P.3d 552, 555 (Colo. 2017) (quotation omitted). "Unless the contract reveals on its face that the stipulated payment is so disproportionate to any possible loss as to constitute a penalty, the determination of whether the specified damages constitute a penalty is a question of fact." *Bd. of Cnty. Comm'rs v. City & Cnty. of Denver*, 40 P.3d 25, 29 (Colo. App. 2001). The party challenging the liquidated damages provision bears the burden of proof. *Id.* (citing *Rohauer v. Little*, 736 P.3d 403, 410 (Colo. 1987)).

Defendants do not dispute the first and third elements and only challenge whether the liquidated damages amount was a reasonable damages estimate. [Doc. 136 at ¶¶ 18–20]. Defendants contend that the $2.5 million liquidated damages amount is disproportionate to both the $2 million Settlement Amount and Defendants' "original indebtedness" of approximately $1.05 million. [*Id.* at ¶ 19]. Defendants also argue in cursory fashion that the addition of $500,000 to the $2 million Settlement Amount was unreasonable at the time of contracting. [*Id.* at ¶ 20]. Plaintiffs reply that the $2.5 million amount reflects a compromise reached during negotiations to settle Plaintiffs' original claims, which Plaintiffs valued at "over $7 million." [Doc. 144 at ¶¶ 24–25, 29 (citing

10

*Resol. Tr. Corp. v. Avon Ctr. Holdings, Inc.*, 832 P.2d 1073 (Colo. App. 1992))]. Plaintiffs also point out that the $500,000 difference between the Settlement Amount and liquidated damages amount represents the interest Plaintiffs could have earned under the five-year payment plan for the Settlement Amount, which Plaintiffs calculate at $600,000. [*Id.* at ¶¶ 26–27].

The Court finds that Defendants have failed to carry their burden to establish that the $2.5 million liquidated damages amount was unreasonable at the time the Parties executed the Settlement Agreement. Defendants suggest that the 25% increase between the Settlement Amount and the liquidated damages amount is per se unreasonable but provide no authority to support this point. [Doc. 136 at ¶ 19]. Moreover, the Court agrees with Plaintiffs that the $500,000 difference between the two amounts is not unreasonable as compared to Plaintiffs' expected interest earned under the Settlement Agreement. Although the Court cannot undertake any precise calculations,[6] the Court agrees with Plaintiffs that 6% annual interest on the unpaid portion of the $2 million Settlement Amount over five years would have entitled Plaintiffs to a sizeable amount of interest. To be sure, $500,000 appears close to the upper limit of possible interest that Plaintiffs could have earned. But Defendants have presented no evidence or non-conclusory arguments that, at the time of contracting, such an estimate was unreasonably disproportionate to Plaintiffs' expected loss of interest if Defendants breached their payment obligations.

The Court also agrees with Plaintiffs that the reasonableness of the liquidated damages amount should be evaluated based on the context in which it was negotiated.

---

[6] The details of the Parties' payment plan are redacted from the Settlement Agreement, [Doc. 135-2 at ¶ 2], so the Court cannot calculate precisely the interest Plaintiffs expected to earn from the Settlement Agreement.

*See, e.g.*, *Bd. of Cnty. Comm'rs*, 40 P.3d at 29 (reasonableness evaluated at time of contracting).  Specifically, Defendants apparently conceded they had some liability to Plaintiffs but valued their liability at approximately $1.05 million, whereas Plaintiffs asserted that they were owed several million dollars more.  *See* [Doc. 136 at ¶¶ 2, 19; Doc. 144 at ¶ 15, 20].  The Parties' briefing establishes that the Settlement Agreement—including the liquidated damages amount—reflects a negotiated compromise to reconcile the Parties' competing positions on Defendants' liability.[7]  [Doc. 136 at ¶¶ 2–10; Doc. 144 at ¶¶ 16–18; Doc. 135-2 at ¶ 16 (Settlement Agreement stating that "[i]t is specifically understood and agreed that this Agreement is the result of extensive negotiations among the Parties and their counsel")]; *cf. Resol. Tr. Corp.*, 832 P.2d at 1075 (recognizing that when parties enter a "settlement arrived at after an agreed breach" of a previous contract, they may "agree on what terms of settlement they will, however unfavorable (short of unconscionability) the accord may be to the party in default").  Viewing the liquidated damages amount in light of the current record, the Court concludes that Defendants have failed to show that the agreed amount was unreasonable at the time of contracting.

### C. Reasonableness of Proposed Consent Judgment

Defendants raise no other challenges to entry of the proposed Consent Judgment.  The Court has independently reviewed the judgment and concludes that it "is fair, adequate, and reasonable" and "is not illegal, a product of collusion, or against the public interest."  *United States v. Colorado*, 937 F.2d at 509.  Accordingly, Plaintiffs' Motion is

---

[7] In light of Plaintiffs' evidentiary arguments, the Court only relies on the Parties' representations that negotiations occurred, not any specific statements or conduct during those negotiations.  [Doc. 144 at ¶¶ 32–39].  The Court takes no position on whether such statements or conduct would be admissible under Federal Rule of Evidence 408, nor whether Rule 408 applies at all in this context.

respectfully **GRANTED**.  Judgment **SHALL ENTER** for Plaintiffs and against Defendants as set out in the proposed Consent Judgment.  The Court will enter the Consent Judgment as a separate document.

## CONCLUSION

For the reasons stated herein, **IT IS ORDERED** that:

(1)  Plaintiffs' Motion to Reopen Case for the Limited Purpose of Entering Consent Judgment [Doc. 131] is **GRANTED**;

(2)  This case is **REOPENED** for the limited purpose of entering judgment;

(3)  The Court shall **ENTER** the proposed Consent Judgment as a separate document;

(4)  Plaintiffs are **AWARDED** their costs pursuant to Fed. R. Civ. P. 54(d) and D.C.COLO.LCivR 54.1; and

(5)  The Clerk of Court is **DIRECTED** to **TERMINATE** this case.

DATED:  February 26, 2026

BY THE COURT:

Nina Y. Wang
United States District Judge

13